**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS**

| | | |
|---|---|---|
| **KATHRYN HEUERTZ,** | ) | |
| | ) | |
| **Plaintiff,** | ) | **CIVIL ACTION** |
| | ) | |
| **v.** | ) | **No. 19-2756-KHV** |
| | ) | |
| **CAREGIVERS HOME HEALTH LLC, et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |
| | ) | |

**MEMORANDUM AND ORDER**

Kathryn Heuertz filed suit against Caregivers Home Health LLC, Caregivers Holding Company, Caregivers of Kansas, Inc. and Caregivers, Inc., alleging that they discriminated against her on the basis of sex in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e et seq., retaliated against her for asserting rights under Title VII and fraudulently and negligently misrepresented the terms of her employment.  This matter is before the Court on Defendants' Motion For Summary Judgment (Doc. #109) filed December 10, 2021, Plaintiff's Motion For Partial Summary Judgment (Doc. #112) filed December 10, 2021, plaintiff's Motion To Strike, Or In The Alternative Disregard Affidavit Of Jean Sanchez And Brief In Support (Doc. #118) filed January 3, 2022 and plaintiff's Motion To Strike, Or In The Alternative Disregard, Affidavit Of Jean Sanchez Relied Upon In Defendants' Response To Plaintiff's Motion For Partial Summary Judgment And Brief In Support (Doc. #132) filed January 18, 2022.  For reasons stated below, the Court sustains in part defendants' motion for summary judgment and overrules plaintiff's motions.

**Summary Judgment Standards**

Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories,

and admissions on file, together with the affidavits, if any, show no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.  See Fed. R. Civ. P. 56(c); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986); Hill v. Allstate Ins. Co., 479 F.3d 735, 740 (10th Cir. 2007).  A factual dispute is "material" only if it "might affect the outcome of the suit under the governing law."  Liberty Lobby, 477 U.S. at 248.  A "genuine" factual dispute requires more than a mere scintilla of evidence in support of a party's position.  Id. at 252.

The moving party bears the initial burden of showing the absence of any genuine issue of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); Nahno-Lopez v. Houser, 625 F.3d 1279, 1283 (10th Cir. 2010).  Once the moving party meets this burden, the burden shifts to the nonmoving party to demonstrate that genuine issues remain for trial as to those dispositive matters for which the nonmoving party carries the burden of proof.  Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc., 912 F.2d 1238, 1241 (10th Cir. 1990); see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586–87 (1986).  To carry this burden, the nonmoving party may not rest on the pleadings but must instead set forth specific facts supported by competent evidence.  Nahno-Lopez, 625 F.3d at 1283.

In applying these standards, the Court views the factual record in the light most favorable to the party opposing the motion for summary judgment.  Dewitt v. Sw. Bell Tel. Co., 845 F.3d 1299, 1306 (10th Cir. 2018).  The Court may grant summary judgment if the nonmoving party's evidence is merely colorable or not significantly probative.  Liberty Lobby, 477 U.S. at 250–51. Essentially, the inquiry is "whether the evidence presents a sufficient disagreement to require submission to the jury or whether it is so one-sided that one party must prevail as a matter of law." Id. at 251–52.

**Motions To Strike Sanchez Affidavit**

Plaintiff asks the Court to strike the affidavit of Jean Sanchez, which defendants submitted in support of their motion for summary judgment and in opposition to plaintiff's motion for summary judgment. <u>See</u> <u>Motion To Strike</u> (Doc. #118); <u>Motion To Strike</u> (Doc. #132). Rule 12(f), Fed. R. Civ. P., authorizes the Court to strike material from pleadings. A response to a motion for summary judgment and its attachments are not pleadings. <u>See</u> Fed. R. Civ. P. 7(a) (pleadings include complaint, answer, reply to counterclaim, answer to counterclaim, third-party complaint and third-party answer). A party may object to summary judgment evidence that is inadmissible, but a separate motion to strike is not necessary or appropriate. Fed. R. Civ. P. 56(c)(2) (party may object that material cited cannot be presented in form that would be admissible in evidence); Fed. R. Civ. P. 56 advisory committee note to 2010 amendment (no need to file separate motion to strike). Accordingly, the Court treats plaintiff's motions to strike solely as requests that the Court not consider the Sanchez declaration.

Plaintiff objects that Sanchez is not competent to testify about which entity hired plaintiff and controlled the terms and conditions of her employment. <u>See</u> <u>Affidavit of Jean Sanchez</u>, (Doc. #110-6) filed December 10, 2021, ¶¶ 3–12. Sanchez was the Director of Operations of Caregivers, Inc., Caregivers Home Health, LLC and Caregivers of Kansas, LLC. Accordingly, as to these three entities, Sanchez is competent to testify about which entity controlled the terms and conditions of plaintiff's employment.

Plaintiff also objects that Sanchez is not qualified to testify about plaintiff's attendance because she did not know plaintiff's specific schedule and she did not attach the time records on which she relied. The Court need not address plaintiff's objection. Even if the Court excluded Sanchez's statements about plaintiff's attendance, it would reach the same result on the parties'

cross motions for summary judgment.

<b><u>Factual Background</u></b>

The following is a brief summary of the material facts that are uncontroverted, deemed admitted or, where controverted, viewed in the light most favorable to plaintiff, the non-movant.[1]

From December 3, 2018 until February 18, 2019, plaintiff worked as an administrative assistant for defendants.  Patty Fisher, who also worked as an administrative assistant, was plaintiff's immediate supervisor.  In turn, Edward Schulte, Jean Sanchez and Heather Strecker supervised Fisher.

During plaintiff's job interview, she told Schulte, Sanchez, Strecker and Fisher that because of childcare responsibilities and other family matters, she was looking for a job with some flexibility.  Schulte, Sanchez, Strecker and Fisher responded that plaintiff would have a "somewhat flexible arrive time and a somewhat flexible leave time and that [she] [c]ould come in and do [her] work for the day and then at the end of the day [she] could leave if there was nothing else to do."  Plaintiff accepted the position in large part because of this flexibility.

**I.    Identity Of Plaintiff's Employer(s)**

During plaintiff's employment, Schulte, James Klausman and Floyd Eaton, Jr. owned Caregivers Holding Company, Inc., which in turn owned three subsidiaries: Caregivers Home Health, LLC, Caregivers of Kansas, Inc. and Caregivers, Inc.  Schulte was President and CEO and Jean Sanchez was Director of Operations of the three subsidiaries.

Caregivers, Inc., Caregivers of Kansas, Inc. and Caregivers Holding Company, Inc. shared

---

[1]    Defendants seeks summary judgment on all of plaintiff's claims (Counts 1–6).  To address defendants' motion, the Court sets forth the factual summary in the light most favorable to plaintiff.  Plaintiff has filed a motion for partial summary judgment on her sex discrimination claim (Count 1).  Below, the Court addresses separately whether viewing the facts in the light most favorable to defendants, plaintiff is entitled to partial summary judgment on Count 1.

-4-

offices in Topeka, Kansas at the same address which Caregivers Home Health, LLC used as a mailing address.  Schulte used a single email account for the three subsidiaries.  The three subsidiaries shared the same Human Resources ("HR") department, which is a separate company—Midwest Health—located at the same physical office in Topeka as the Caregivers entities.  Midwest Health also was the payroll provider for the subsidiaries.  Plaintiff signed or received employment documents from "Caregivers Home Health," "Caregivers, Inc.," "Caregivers of Kansas," "Caregivers Home Care" and "Caregivers."   The employee handbook refers to plaintiff's employer as Caregivers Home Care and Caregivers Home Health.  Plaintiff completed federal and state tax forms which indicated that Midwest Health was her employer.

## II.     Plaintiff's Employment

As an administrative assistant, plaintiff's job responsibilities included auditing medical charts before submitting them for billing and filing medical orders.  Defendants did not give plaintiff specific goals or performance metrics as to how many charts she had to complete on a daily or weekly basis.  During her employment, plaintiff increased her speed and efficiency in handling audit reports and filing medical orders.

In addition to Christmas and New Year's Day, when the office was closed, Fisher and other supervisors told plaintiff that she could take Christmas Eve off and frequently told her that she and other employees could come in late or leave early because of weather conditions.

On January 28, 2019, at a meeting on plaintiff's performance, Fisher and Strecker gave plaintiff a positive verbal review and did not note any deficiencies in her job performance.  Fisher and Strecker told plaintiff that she was "doing great starting off and that [she] would get better and get faster [as she] learned the job."

On February 7, 2019, plaintiff told Strecker that she was pregnant and asked about time off

for medical appointments.  Strecker or Fisher told her that she could take time off for doctors' appointments but because she did not have accrued paid time off, she would have to take unpaid leave for such appointments.  Plaintiff then told Strecker or Fisher about upcoming appointments on the morning of February 11 and the afternoon of February 13.  On February 14, after calling her doctor, plaintiff told Strecker that she had some spotting and that her doctor recommended that she go home and take it easy.  Plaintiff told Strecker that she was concerned because during a prior pregnancy, her doctor placed her on bedrest because of spotting.  The next day, Sanchez sent an email to Fisher, with copies to Schulte and Strecker, stating that she had received approval to terminate plaintiff's employment.  Defendants decided to wait until the following Monday to tell plaintiff.

On February 18, 2019, Sanchez and Fisher told plaintiff that defendants had terminated her employment.  Sanchez gave plaintiff a Disciplinary Action Record which indicated that she was "not meeting basic employment expectations," had "excessive absences" and "Per Employee Code of Conduct, individual demonstrates inefficiency in performance of assigned duties."  The form included five boxes for discipline: initial written warning, second written warning, final written warning, suspension and termination.  Defendants checked the box for termination.

## III.   Procedural History

On December 12, 2019, plaintiff filed suit in this Court.  Under Title VII, plaintiff alleges that defendants discriminated against her on the basis of her sex (Count 1) and retaliated against her for exercising statutory rights (Count 2).  Plaintiff also asserts claims for fraud by silence (Count 3), fraudulent misrepresentation (Count 4), negligent misrepresentation (Count 5) and negligent nondisclosure (Count 6).  Defendants assert that they are entitled to summary judgment on each of plaintiff's claims.

**Analysis**

## I.      Defendants As Single Employer

Caregivers Home Health, LLC, Caregivers Holding Company and Caregivers of Kansas, Inc. seek summary judgment on all of plaintiff's claims.  They assert that plaintiff has not presented evidence to establish that any entity other than Caregivers, Inc. employed her.  Plaintiff argues that all four defendants are liable as a single employer.

The single employer test examines whether nominally separate entities effectively constitute an integrated enterprise.  See Bristol v. Bd. of Cty. Comm'rs of County of Clear Creek, 312 F.3d 1213, 1217 (2002) (en banc).  Under the integrated enterprise test, the Court weighs four factors: (1) interrelations of operations; (2) common management; (3) centralized control of labor relations; and (4) common ownership or financial control.  Id. at 1220.  Centralized control of labor relations is the most important factor.  Id.

Plaintiff has provided ample evidence for a reasonable jury to find that Caregivers, Inc., Caregivers Home Health, LLC, and Caregivers of Kansas, Inc. (the three subsidiaries of Caregivers Holding Company, Inc.) were an integrated enterprise.  Schulte was President and CEO and Jean Sanchez was Director of Operations of all three.  Caregivers, Inc. and Caregivers of Kansas, Inc. shared offices in Topeka, Kansas at the same address which Caregivers Home Health, LLC used as a mailing address.  Schulte used a single email account for the three subsidiaries.  The three subsidiaries shared an HR department, which in fact was a separate company—Midwest Health—located at the same physical office as Caregivers, Inc. and Caregivers of Kansas, Inc.  Midwest Health was payroll provider for the three subsidiaries.  Plaintiff signed or received employment documents from "Caregivers Home Health," "Caregivers, Inc.," "Caregivers of Kansas," "Caregivers Home Care" and "Caregivers."   The employee handbook referred to plaintiff's

employer as Caregivers Home Care and Caregivers Home Health.  Plaintiff completed federal and state tax forms which indicated that her employer was Midwest Health, which provided HR and payroll services for all three subsidiaries.  Considering all four factors together and most importantly that the three subsidiaries had centralized control of labor relations through Midwest Health, plaintiff has established a genuine issue of material fact whether Caregivers Home Health, LLC, Caregivers of Kansas, Inc. and Caregivers, Inc. were an integrated enterprise.[2]  The Court therefore overrules defendants' motion for summary judgment on the question whether Caregivers Home Health, LLC and Caregivers of Kansas, Inc. were plaintiff's employer.

As to Caregivers Holding Company, plaintiff has not presented evidence that it operated as an integrated enterprise with any of its three subsidiaries.  The present record does not establish that it was anything except a holding company for the three subsidiaries.  Most importantly, plaintiff has not argued or presented evidence that Caregivers Holding Company had employees— or if it did so—whether it used Midwest Health as its HR department and payroll provider.  Caregivers Holding Company shared a physical location with two subsidiaries and Midwest Health, but this fact alone does not establish that it and its subsidiaries constituted a single employer.  Absent evidence that Caregivers Holding Company had employees, plaintiff does not present evidence which raises a genuine issue of material fact whether Caregivers Holding Company, Inc. was an integrated enterprise or joint employer with Caregivers, Inc.  The Court

---

[2]        Plaintiff also argues that Caregivers Home Health, LLC and/or Caregivers of Kansas, Inc. could be liable as a joint employer with Caregivers, Inc.  The joint-employer test addresses whether independent entities share or co-determine matters governing the essential terms and conditions of employment such that the entities can be considered employers of the same individuals.  Bristol, 312 F.3d at 1218–19.  Because plaintiff has established a genuine issue of material fact whether Caregivers Home Health, LLC and Caregivers of Kansas, Inc. are an integrated enterprise with Caregivers, Inc., the Court need not consider this alternative theory of liability as to these defendants.

therefore sustains defendants' motion for summary judgment as to Caregivers Holding Company, Inc.

## II.     Title VII Discrimination Claim (Count 1)

Title VII makes it unlawful to discriminate against any individual with respect to terms, conditions or privileges of employment based on the employee's sex.  See 42 U.S.C. § 2000e–2(a)(1).  In 1978, the Pregnancy Discrimination Act ("PDA") amended Title VII in 1978 to bring pregnancy within the definition of sex discrimination.  See E.E.O.C. v. Ackerman, Hood & McQueen, Inc., 956 F.2d 944, 947 (10th Cir. 1992) (PDA added to Title VII to prevent differential treatment of women in all aspects of employment based on pregnancy).

Plaintiff alleges that because of her pregnancy, defendants terminated her employment. Plaintiff may establish that defendants acted with discriminatory intent under Title VII either directly, through direct or circumstantial evidence, or indirectly, through the inferential burden-shifting scheme established in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 804 (1973).  See Jones v. Okla. City Pub. Schs., 617 F.3d 1273, 1278–79 (10th Cir. 2010).  Here, plaintiff relies on the indirect method of proving discrimination.  Under the McDonnell Douglas burden-shifting framework, plaintiff has the initial burden of establishing a prima facie case of discrimination. McDonnell Douglas, 411 U.S. at 802; Sanders v. Sw. Bell Tel., L.P., 544 F.3d 1101, 1105 (10th Cir. 2008).  If plaintiff satisfies her burden, the burden shifts to defendants to articulate a legitimate, nondiscriminatory reason for terminating plaintiff's employment.  McDonnell Douglas, 411 U.S. at 802–03.  If defendants do so, the burden shifts back to plaintiff to show a genuine issue of material fact whether defendants' stated reason is pretextual, i.e. unworthy of belief.  Sanders, 544 F.3d at 1105.

Here, defendants assume that plaintiff can establish a prima case of discrimination, but maintain that they terminated her employment for legitimate, non-discriminatory reasons, i.e. she failed to effectively perform her job and had excessive absences.  Defendants' Memorandum In Support Of [Its] Motion For Summary Judgment (Doc. #110) filed December 10, 2021 at 22. Because defendants have met their burden of offering non-discriminatory reasons for terminating plaintiff's employment, the presumption of discrimination drops from the case and plaintiff must establish by a preponderance of the evidence that the proffered reasons were not the true reasons for the employment decision.  Aramburu v. Boeing Co., 112 F.3d 1398, 1403 (10th Cir. 1997). Plaintiff may show pretext by establishing either that a discriminatory reason more likely motivated defendants or that their explanations are unworthy of credence.  Rea v. Martin Marietta Corp., 29 F.3d 1450, 1455 (10th Cir. 1994).

Plaintiff can show pretext by pointing to "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable fact finder could rationally find them unworthy of credence." Morgan v. Hilti, Inc., 108 F.3d 1319, 1323 (10th Cir. 1997) (quotation marks and citation omitted).  While "[t]his burden is not onerous . . . it is also not empty or perfunctory."  Id. at 1323–24.  Plaintiff typically makes a showing of pretext in one of three ways: (1) evidence that defendants' stated reason for the adverse employment action was false, i.e. unworthy of belief; (2) evidence that defendants acted contrary to a written company policy prescribing the action to be taken under the circumstances; or (3) evidence that defendants acted contrary to an unwritten policy or contrary to company practice when making the adverse employment decision.  Kendrick v. Penske Transp. Servs., Inc., 220 F.3d 1220, 1230 (10th Cir. 2000).  More specifically, evidence of pretext may include the following: "prior treatment of plaintiff; the employer's policy and practice regarding

minority employment (including statistical data); disturbing procedural irregularities (e.g., falsifying or manipulating . . . criteria); and the use of subjective criteria." <u>Simms v. Okla. ex rel. Dept. of Mental Health & Substance Abuse Servs.</u>, 165 F.3d 1321, 1328 (10th Cir. 1999).

Plaintiff asserts that defendants' stated reasons for terminating her employment are pretext for pregnancy discrimination because they are false. Specifically, plaintiff presented evidence that Fisher and other supervisors approved her absences. Before the week of February 11, 2019, her supervisors had not discussed terminating her employment and had never told her of any deficiencies in her work performance. Indeed, less than one month earlier, Fisher and Strecker gave plaintiff a positive verbal review. On February 7, 2019, plaintiff told Strecker that she was pregnant. On February 14, 2019, plaintiff told Strecker that she had some spotting and was concerned because during her prior pregnancy, her doctor had placed her on bedrest because of spotting. One day later, defendants decided to terminate plaintiff's employment. As of February 15, 2019, plaintiff had at least two weeks remaining on her informal 90-day probationary period. On February 18, Sanchez and Fisher told plaintiff that her employment had ended. Sanchez gave plaintiff a Disciplinary Action Record which indicated that she was "not meeting basic employment expectations" and had "excessive absences." The form included five boxes for discipline: initial written warning, second written warning, final written warning, suspension and termination. Defendants checked the box for termination.

Defendants decided to terminate plaintiff's employment one week after plaintiff notified Strecker of her pregnancy and one day after defendants learned that plaintiff might require time off for bedrest. Plaintiff had received a positive verbal review less than one month earlier. Given this timing, and the lack of documentation or notice to plaintiff that she was not performing up to expectations, a reasonable jury could easily find that defendants' stated reasons for termination are

not only unworthy of belief but a pretext for sex discrimination. In other words, construed in the light most favorable to plaintiff, the record creates a genuine issue of material fact about the truth of defendants' stated reasons for discharge. The Court therefore overrules defendants' motion for summary judgment on plaintiff's sex discrimination claim.

Plaintiff argues that defendants' stated reasons are so indisputably pretextual that she is entitled to summary on defendants' liability for sex discrimination. Plaintiff has presented no direct evidence of sex discrimination. Although plaintiff has stated a version of the facts under which she might prevail based on indirect evidence, a reasonable jury could find otherwise. For example, Fisher, who was in charge of plaintiff's day-to-day responsibilities, testified that in January of 2019, she was concerned that plaintiff's attendance was below average. Sanchez and Strecker testified that before they learned of plaintiff's pregnancy, they were concerned about her poor attendance. Specifically, Strecker testified that because of absences, she believed that plaintiff was not going to become efficient in her auditing position. To determine whether defendants actually terminated plaintiff's employment because of absences and job performance, a jury will have to weigh the relative credibility of the witnesses. On a motion for summary judgment, the Court cannot engage in that task. Viewing the evidence in a light most favorable to defendants, the Court must overrule plaintiff's motion for summary judgment.

## III.    Title VII Retaliation Claim (Count 2)

Plaintiff alleges that defendants terminated her employment because she told her supervisors that she would need to miss work for medical appointments related to pregnancy. Title VII makes it unlawful for an employer to retaliate against an employee because she has "opposed any practice made an unlawful employment practice" under Title VII or "participated in any manner in an investigation, proceeding, or hearing" under Title VII. 42 U.S.C. § 2000e–3(a).

To prevail, plaintiff must establish that protected activity was a but-for cause of defendants' decision to terminate her employment.  See Univ. of Texas Sw. Med. Ctr. v. Nassar, 570 U.S. 338, 360 (2013).

As with plaintiff's pregnancy discrimination claim, she can establish retaliation either with direct evidence or indirectly by relying on the three-part McDonnell Douglas framework.  Because plaintiff seeks to prove her claim through indirect evidence, the burden-shifting analysis of McDonnell Douglas applies.  Under this framework, plaintiff must initially establish a prima facie case of retaliation.  To do so under Title VII, she must show that (1) she engaged in protected activity; (2) a reasonable employee would have found the challenged action materially adverse; and (3) a causal connection exists between the protected activity and the materially adverse action. Khalik v. United Air Lines, 671 F.3d 1188, 1193 (10th Cir. 2002); see Zisumbo v. Ogden Reg'l Med. Ctr., 801 F.3d 1185, 1199 (10th Cir. 2015).  If plaintiff sets forth a prima facie case, the burden shifts to defendants to provide a legitimate, nondiscriminatory reason for the action. McDonnell Douglas, 411 U.S. at  802.  If defendants successfully do so, the burden shifts back to plaintiff to show that the proffered explanation is a pretext for retaliation.  Id. at 804.

Defendants argue that plaintiff has not shown that she engaged in protected activity under Title VII.[3]  Defendants' Memorandum In Support Of [Its] Motion For Summary Judgment (Doc. #110) at 28–29.  To establish that she engaged in protected activity, plaintiff must show that she either (1) opposed an employment practice that violated Title VII ("opposition clause") or (2) participated in a Title VII investigation ("participation clause").  See 42 U.S.C. § 2000e–3(a)

_____

[3]        Defendants also argue that plaintiff cannot show a causal connection between any protected activity and adverse action or that their stated reasons for terminating her employment were a pretext for retaliation.  Because plaintiff has not presented evidence that she engaged in protected activity under Title VII, the Court need not reach defendants' alternative arguments.

(unlawful for employer to retaliate because employee "opposed any practice made an unlawful employment practice" under Title VII or "participated in any manner in an investigation, proceeding, or hearing" under Title VII).  Plaintiff alleges that she engaged in protected activity when she asked her supervisors about scheduling pregnancy-related medical appointments. Defendants do not dispute that plaintiff's inquiries constitute protected activity.  See Defendants' Reply (Doc. #133) filed January 18, 2022 at 25.  Even so, while plaintiff's inquiries may constitute a request for accommodation for her pregnancy, they do not constitute opposition to a Title VII violation or participation in a Title VII investigation.  See Battino v. Redi-Carpet Sales of Utah, LLC, No. 20-4081, 2021 WL 4144974, at *5 (10th Cir. Sept. 13, 2021) (asking employer for time off not protected activity under Title VII).  Cf. Foster v. Mtn. Coal Co., LLC, 830 F.3d 1178, 1188 (10th Cir. 2016) (under Americans with Disabilities Act, request for accommodation constitutes protected activity supporting retaliation claim).  Indeed, until defendants terminated plaintiff's employment, she had nothing to oppose under Title VII because she understood that they had accepted her request for accommodation.  Because plaintiff has not presented evidence that she opposed a purported Title VII violation or participated in a Title VII investigation, she cannot establish a prima facie case of retaliation.[4]  The Court therefore sustains defendants' motion for summary judgment on plaintiff's retaliation claim (Count 2).

## IV.   Tort Claims (Counts 3–6)

Plaintiff asserts four tort claims against defendants: fraud by silence (Count 3), fraudulent misrepresentation (Count 4), negligent misrepresentation (Count 5) and negligent nondisclosure

---

[4]      Defendants also argue that plaintiff cannot show a causal connection between any protected activity and a materially adverse action.  Defendants' Memorandum In Support Of [Its] Motion For Summary Judgment (Doc. #110) at 28–29.  Because plaintiff cannot establish that she engaged in protected activity, the Court need not reach defendants' alternative argument.

(Count 6).  Defendants argue that they are entitled to summary judgment on plaintiff's tort claims

because in light of her at-will employment relationship, she has not presented sufficient evidence

for a reasonable jury to find in her favor on each claim.  Plaintiff argues that summary judgment

is not appropriate because even with an at-will employment relationship, an employer has a duty

not to misrepresent or fail to disclose material facts about the terms and conditions of employment.[5]

A.     Fraud By Silence (Count 3) and Negligent Nondisclosure (Count 6)

Plaintiff alleges that when she asked about time off work for pregnancy-related

appointments, defendants fraudulently, or at least negligently, failed to disclose that she was out

of unpaid leave and that she risked termination of her employment if she took time off.  Pretrial

Order (Doc. #108) at 8; see Complaint (Doc. #1), ¶¶ 37–46, 76-85.  Defendants argue that because

plaintiff had an at-will employment relationship, they had no obligation to communicate to her an

impending cause for termination of her employment.  Defendants' Memorandum In Support Of

[Its] Motion For Summary Judgment (Doc. #110) at 29–30, 34–35.

At-will employment is the general rule in Kansas.  Flenker v. Willamette Indus., Inc., 266

Kan. 198, 200, 967 P.2d 295, 298 (1998).  Absent an express or implied contract of fixed duration,

---

[5]        Plaintiff also argues that until the Court determines what entity or entities employed her, it cannot determine whether her tort claims survive summary judgment.  Plaintiff apparently maintains that if some Caregiver defendants did not employ her, they owed her an independent duty not to misrepresent or fail to disclose material facts about her employment with other Caregiver entities.  See Plaintiff's Memorandum In Opposition (Doc. #119) filed January 3, 2022 at 98 ("[A] rational jury could find that [defendants] were acting independently with respect to their communications with Ms. Heuertz [and] some of the [defendants] were giving Ms. Heuertz false information (either intentionally, recklessly, or negligently) about her ability to take off or leave early, while other [defendants], acting as her employer were holding every single one of those times against her, ultimately leading to her termination.").  Plaintiff asserts no legal or equitable basis for imposing such a duty on a non-employer.  In addition, as explained below, an employer generally owes no duty to an at-will employee to notify her of an impending cause for termination of employment.  Likewise, a company would have no duty to disclose such information to an employee of a corporate affiliate.

or where recognized public policy concerns are raised, employment is terminable at the will of either party. Frye v. IBP, Inc., 15 F. Supp. 2d 1032, 1046 (D. Kan. 1998). Kansas courts narrowly recognize at least two public policy exceptions to the rule of employment-at-will: "(1) when an employer discharges an employee for exercising rights under the workers compensation laws and (2) when an employer discharges an employee for a good faith report or threat to report a serious infraction of rules, regulations, or law pertaining to the public health, safety, and the general welfare by a co-worker or employer (whistleblowing)." Riddle v. Wal-Mart Stores, Inc., 27 Kan. App.2d 79, 85, 998 P.2d 114, 119 (2000).

An essential element of both fraud by silence and negligent nondisclosure is that a defendant had a duty to communicate material facts to plaintiff. See OMI Holdings, Inc. v. Howell, 260 Kan. 305, 345, 918 P.2d 1274, 1299 (1996) (fraud by silence requires that defendant had obligation to communicate material facts to plaintiff); Hanson v. Hackman Corp., 192 P.3d 1130, 2008 WL 4471679, at *6 (Kan. Ct. App. 2008) (negligent nondisclosure requires that defendant had duty to plaintiff to exercise reasonable care to disclose matter in question). Here, because plaintiff and defendants had an at-will employment relationship, she cannot rely on the implied covenant of good faith and fair dealing. See Morriss v. Coleman Co., 241 Kan. 501, 738 P.2d 841 (1987) (implied duty of good faith and fair dealing does not apply to employment-at-will contracts).

Without authority, plaintiff essentially asks the Court to find that an employer has an implied duty to warn an employee before it can terminate her employment for absences or other conduct. Such a duty would be inconsistent with at-will employment. See Buckley v. Keebler Co., 153 F.3d 726, 1998 WL 314566, at *6 (10th Cir. 1998) (under Kansas law, employer owes no duty to at-will employee to investigate performance deficiencies and follow its own

pretermination procedures); <u>Prost v. F.W. Woolworth Co.</u>, 647 F. Supp. 946, 947 (D. Kan. 1985) (employer has no duty to conduct non-negligent performance evaluations of at-will employee), <u>aff'd</u>, No. 85-2457, 1986 WL 32744 (10th Cir. July 15, 1986); <u>see also</u> <u>Mission Petro. Carriers, Inc. v. Solomon</u>, 106 S.W.3d 705, 715 (Tex. 2003) (employer owes no duty to use reasonable care in conducting employee drug tests of at-will employee; imposing such duty would "quickly swallow" employment-at-will doctrine).   Because plaintiff has not presented evidence that defendants had a duty to disclose that she was out of unpaid leave or that she risked termination if she took time off, the Court sustains defendants' motion for summary judgment on plaintiff's fraud by silence and negligent nondisclosure claims (Counts 3 and 6).

      B.    <u>Fraudulent Misrepresentation (Count 4)</u>

Plaintiff alleges that when she asked, Strecker and Fisher fraudulently misrepresented that she could take time off work for pregnancy-related appointments.[6]  To prevail on a claim for fraudulent misrepresentation, plaintiff must establish that (1) defendants made an untrue statement of fact, (2) they knew it was untrue, (3) they made it with the intent to deceive her or with reckless disregard for the truth, (4) she justifiably relied on the statement and (5) she acted to her injury and damage.  <u>Gerhardt v. Harris</u>, 261 Kan. 1007, 1013, 934 P.2d 976, 981 (1997).  Defendants argue that they are entitled to summary judgment because plaintiff has not presented evidence that they

---

[6]     In her opposition memorandum, plaintiff also refers to her supervisors' representation that the position was a "flexible job" and that she could take time off work for reasons such as inclement weather.  <u>Plaintiff's Memorandum In Opposition</u> (Doc. #119) at 97.  In the pretrial order, plaintiff limited the factual basis for her fraudulent misrepresentation claim to her supervisors' statements that it was "fine" if she took time off for pregnancy-related appointments.  <u>Pretrial Order</u> (Doc. #108) at 8.  Similarly, in the complaint, plaintiff's fraudulent misrepresentation claim was limited to her supervisors' approval to take off work for pregnancy-related appointments.  <u>See</u> <u>Complaint</u> (Doc. #1), ¶¶ 50–59.  Therefore, for purposes of defendants' motion for summary judgment, the Court considers only the alleged fraudulent representations in February of 2019 related to plaintiff taking time off work for pregnancy-related appointments.

made an untrue statement of fact and did so with intent to deceive plaintiff or with reckless disregard for its truth.  Defendants' Memorandum In Support Of [Its] Motion For Summary Judgment (Doc. #110) at 29–30.

Defendants argue that plaintiff has not presented sufficient evidence for a jury to find that they made an untrue statement of fact.  The Court agrees.  As noted above, plaintiff alleges that Strecker and Fisher misrepresented that she could take time off work for pregnancy-related medical appointments.  Plaintiff does not explain how these statements were untrue.  Indeed, she could (and did) take time off work for medical appointments on February 11 and 13, 2019.  Even if defendants later determined that plaintiff's aggregated absences (including non-medical appointments) were excessive and terminated her employment, this evidence does not tend to show that prior statements about her ability to take off work were false.[7]

As to the third element of a fraudulent misrepresentation, defendants argue that plaintiff has no evidence that they made any statement with the intent to deceive her or with reckless disregard for the truth.  Absent evidence that the supervisors' statements were false, plaintiff cannot show that they made such statements with the intent to deceive her or with reckless disregard for the truth.

In sum, plaintiff has not presented evidence for a reasonable jury to find that defendants made an untrue statement of fact or that they did so with the intent to deceive her or with reckless disregard for the truth.  The Court therefore sustains defendants' motion for summary judgment

---

[7]  Plaintiff's fraudulent misrepresentation claim essentially is the same as her fraud by silence claim, i.e. she alleges that her supervisors' statement was false because they did not warn her that she was out of leave or that if she took too many days off in a short period of time, she risked termination of her employment.  As explained above, based on the parties' at-will employment relationship, defendants had no duty to disclose such information.

on her fraudulent misrepresentation claim.

C.     Negligent Misrepresentation (Count 5)

Plaintiff alleges that when she asked whether she could take time off for pregnancy-related appointments, Strecker and Fisher negligently misrepresented that she could do so.[8]  To prevail on a claim for negligent misrepresentation, plaintiff must establish allege that (1) defendants failed to exercise reasonable care in obtaining or communicating false information; (2) plaintiff relied on the information that defendants supplied for their benefit and guidance; and (3) plaintiff suffered damages in a business transaction that defendants intended to influence.  See Rinehart v. Morton Bldgs., Inc., 297 Kan. 926, 937, 305 P.3d 622, 630 (2013); Stechschulte v. Jennings, 297 Kan. 2, 22, 298 P.3d 1083, 1098 (2013).  Defendants argue that they are entitled to summary judgment because plaintiff has not presented evidence for a reasonable jury to find in her favor on the first and third elements, i.e. that they made an untrue statement or that plaintiff's decision to take time off work was a business transaction that they intended to influence.  Defendants' Memorandum In Support Of [Its] Motion For Summary Judgment (Doc. #110) at 33–34.

As with plaintiff's fraudulent misrepresentation claim, plaintiff has not presented evidence which would allow a reasonable jury to find that defendants made an untrue statement of fact.  In addition, plaintiff fails to explain how her supervisors' statements related to a business transaction

---

[8]     In her opposition memorandum, plaintiff refers to her supervisors' representation at her interview that the position was a "flexible job" and her supervisors' later representations that she could take time off work for other reasons such as inclement weather.  Plaintiff's Memorandum In Opposition (Doc. #119) at 97.  In the pretrial order, plaintiff limited the factual basis for her negligent misrepresentation claim to her supervisors' statements that it was "fine" if she took time off for pregnancy-related appointments.  Pretrial Order (Doc. #108) at 8.  Similarly, in the complaint, plaintiff's negligent misrepresentation claim was limited to her supervisors' approval for her to take off work for pregnancy-related appointments.  See Complaint (Doc. #1), ¶¶ 63–72.  Therefore, for purposes of defendants' motion for summary judgment, the Court considers only the alleged negligent representations in February of 2019 related to plaintiff taking time off work for pregnancy-related appointments.

that defendants intended to influence.  The Court therefore sustains defendants' motion for summary judgment on plaintiff's negligent misrepresentation claim.

**IT IS THEREFORE ORDERED** that Defendants' Motion For Summary Judgment (Doc. #109) filed December 10, 2021 is **SUSTAINED in part**.  The Court sustains defendants' motion as to plaintiff's retaliation claim under Title VII (Count 2), her tort claims (Counts 3 through 6) and all claims against Caregivers Holding Company, Inc.  Otherwise, the Court overrules defendants' motion.  Plaintiff's sex discrimination under Title VII (Count 1) against Caregivers Home Health LLC, Caregivers of Kansas, Inc. and Caregivers, Inc. remains for trial.

**IT IS FURTHER ORDERED** that Plaintiff's Motion For Partial Summary Judgment (Doc. #112) filed December 10, 2021 is **OVERRULED**.

**IT IS FURTHER ORDERED** that plaintiff's Motion To Strike, Or In The Alternative Disregard Affidavit Of Jean Sanchez And Brief In Support (Doc. #118) filed January 3, 2022 is **OVERRULED**.

**IT IS FURTHER ORDERED** that plaintiff's Motion To Strike, Or In The Alternative Disregard, Affidavit Of Jean Sanchez Relied Upon In Defendants' Response To Plaintiff's Motion For Partial Summary Judgment And Brief In Support (Doc. #132) filed January 18, 2022 is **OVERRULED**.

Dated this 3rd day of March, 2022 at Kansas City, Kansas.

s/ Kathryn H. Vratil
KATHRYN H. VRATIL
United States District Judge